IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:18-CV-01968-RPM

| | |
|---|---|
| SEAN STENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KEITH EDMONDS and CARGILL | ) |
| MEAT LOGISTICS SOLUTIONS, INC. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS**

Defendants Cargill Meat Logistics Solutions, Inc. ("Cargill") and Keith Edmonds (collectively the "Defendants") respectfully move the Court for (1) an order pursuant to Fed. R. Civ. P. 37(a)(5)(A) awarding reasonable attorney fees associated with their April 30, 2019 Motion to Compel and preparation of this Motion; and (2) sanctions for abuse of the litigation process pursuant to the Court's inherent sanctioning powers, or pursuant to Plaintiff's failure to obey this Court's Order under Fed. R. Civ. P. 37(b)(2)(A).[1]

**INTRODUCTION**

Defendants bring this Motion to address Plaintiff's continued pattern of making demonstrably false representations, including under oath, about the completeness of evidence that

---

[1] Pursuant to D.C.COLO.L.R. 7.1, undersigned counsel certifies that he has conferred with counsel for Plaintiff regarding this Motion, and Plaintiff's counsel stated that Plaintiff has been advised of the Motion but Plaintiff's position is as-yet unclear.

the Court has ordered him to produce, and their recent revelation that Plaintiff has forged evidence in this case. Plaintiff has repeatedly made assertions that he has produced complete financial records. Each time, Plaintiff's assertions have been shown to be demonstrably false. In May 2019, Plaintiff's conduct forced Defendants to make a Motion to Compel for the undisclosed records, which this Court granted in June 2019. Yet, since that time Plaintiff has continued to serially misrepresent the completeness of his records, which has blocked Defendants from identifying and obtaining the records he was ordered to produce. This has caused Defendants great time and expense to try to independently identify all of Plaintiff's records, and to then undertake collection of those records that were readily obtainable to Plaintiff—and which the Court ordered *him* to produce. Further, Defendants recently discovered through a bank's fraud department that Plaintiff falsified "paychecks" he disclosed as supposed evidence of his income before the 2016 collision at issue, from which Plaintiff claims extensive economic and non-economic damages. Defendants have made every effort to resolve these issues without involving the Court. However, given Plaintiff's serial misrepresentations and the serious nature of Plaintiff's conduct, Defendants now move the Court for:

(1) Attorney fees associated with its Motion to Compel and attorney fees associated with the preparation of this Motion; and

(2) A sanction dismissing at least Plaintiff's non-economic claims for Plaintiff's interference with the judicial process pursuant to the Court's inherent powers; or, in the alternative, a sanction pursuant to Rule 37(b)(2)(A) dismissing at least Plaintiff's non-economic claims for Plaintiff's failure to obey this Court's Order.

# BACKGROUND

## I. The Court's June 11, 2019 Order

On June 11, 2019, this Court entered an order granting Defendants' Motion to Compel production of Plaintiff's personal and business financial records from 2009 to present, which Defendants had been seeking since January 18, 2019. Order at 4 (ECF 26) (the "Order"). Defendants sought Plaintiff's financial records as relevant to defend itself, in part, against Plaintiff's non-economic claims stemming from an August 1, 2016 automobile collision.[2] *See, e.g.*, Defs.' Reply Br., at 7–8 (ECF 25). The Court found Plaintiff's financial records would contain information that reflected his activities and emotional state, and thus were relevant to his non-economic claims. *See, e.g.*, Order at 4 (finding financial records "pertinent to the assessment of any changes in his professional and personal activities that could substantiate his non-economic claims"). The Court also noted that Plaintiff's financial records are relevant to his claim of damages "for past and future economic loss." *Id*.

## II. Plaintiff's Pattern of Falsely Certifying Complete Discovery Responses

In response to the Court's Order, Plaintiff produced account statements for a single bank account held by A2Z Radon Mitigation ("A2Z"), Plaintiff's business. It was immediately apparent from those statements that (1) the A2Z account was not a primary account that Plaintiff used day-to-day such that his activities would be revealed; and (2) there existed many other bank

---

[2] Plaintiff claims that he "suffered past and future non-economic damages, including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, and impairment of quality of life." Defs.'s Motion to Compel, at 3, Ex. A (ECF 20).

3

accounts that were not disclosed. *See* A2Z Account Statements (attached as Exhibit A).[3] Defendants awaited the production of these other accounts, but they were not produced.

On July 8, 2019, Defendants' counsel sent Plaintiff's counsel a letter noting the deficiencies—namely that Plaintiff had not produced records related to Plaintiff's *known* checking, savings, and credit card accounts. *See* July 8, 2019 Deficiency Letter (attached as Exhibit B). A dispute then arose regarding the production of Plaintiff's credit card account records, but the parties ultimately agreed on August 14, 2019 that Plaintiff would provide a signed and notarized release for all bank records, a credit report, and a list of all of Plaintiff's personal and business bank accounts, including credit card accounts. Defendants could then undertake the collection of Plaintiff's financial records themselves. On August 19, 2019, Defendants propounded Interrogatory No. 21, formally asking Plaintiff to list all of his bank accounts from 2009 to present. Plaintiff provided an Experian Credit Report for Plaintiff and a notarized release.

On October 11, 2019, more than three weeks after the deadline, Plaintiff responded to Interrogatory No. 21 by directing Defendants to his Experian Credit Report "for a full list of Plaintiffs checking and credit card accounts" even though the list was demonstrably incomplete. *See* Pl.'s Resp. to Defs.' Second Set of Interrogs. (attached as Ex. C). Plaintiff listed no checking accounts, savings accounts, or any business accounts of any kind—including the A2Z account and other accounts that Defendants had uncovered at great work and expense across the previous months. *Id.* Bank statements that Plaintiff did not disclose at all (but Defendants were able to obtain) revealed activity that occurred at least as late as August 2019, the same month that

---

[3] Given the voluminous nature of the account statements (278 pages), the attached exhibit includes only a sample of statements as an example of references to credit card payments and account transfers.

4

Defendants propounded Interrogatory No. 21—and two months *after* the Court ordered Plaintiff to produce his financial records. Plaintiff also did not supply a verification.[4] On October 24, 2019, Defendants' counsel served on Plaintiff his FirstBank account records that he failed to disclose along with a letter noting the continued deficiencies. Defendants once again asked Plaintiff's counsel to provide a *complete* and *verified* list of all of Plaintiff's bank accounts by October 31, 2019. *See* October 24, 2019 Deficiency Letter (attached as Exhibit D).

On November 7, Plaintiff served an Amended Response to Interrogatory No. 21 ("Amended Response"), listing only the accounts contained in the credit report, the previously identified A2Z account, and the accounts for which Defendants' counsel had already supplied records. *See* Amended Response (attached as Exhibit E). On November 18, 2019, Plaintiff produced a verification of his Amended Response. *See* Verification for Amended Response (attached as Exhibit F). Defendants have since learned that Plaintiff failed to list at least two known accounts: an account from SunTrust (starting with 942719-) and an additional FirstBank checking account (ending with -6752), discussed further below. Plaintiff's false verification continues a pattern by Plaintiff of falsely asserting complete productions begun with respect to Plaintiff's production of his medical records prior to Defendants' Motion to Compel.[5]

---

[4] *See* Fed. R. Civ. P. 33(b) (requiring answers to interrogatories to be properly verified under oath).
[5] Plaintiff also previously made multiple false assertions of complete production of medical records. Plaintiff, in verified responses to Defendants' discovery requests seeking medical records, certified completeness of his production, despite numerous references in the produced documents to additional unproduced records. *See* Defs.' Mot. to Compel, at Ex. D. Yet, after Defendants made their Motion to Compel, Plaintiff produced previously undisclosed and highly relevant pharmaceutical histories and spinal imaging records. *See* Pl.'s Fourth Supp. Disclosure (attached as Exhibit G). Plaintiff then made multiple unequivocal assertions to the Court in his Response to the Motion to Compel that all requested medical records had been produced. *See, e.g.*, Pl.'s Resp. at 5 (ECF 21). The Court deemed Plaintiff's assertions "unreliable" because Plaintiff had "repeatedly failed to provide complete records, and . . . appeared unwilling to request and produce

5

### III. Plaintiff's Production of Falsified Checks from an Undisclosed Account

In his Initial Rule 26(a)(1) Disclosures, Plaintiff produced a series of weekly "paychecks" from an A2Z Radon LLC FirstBank account payable to Plaintiff. *See* A2Z000001-2 (attached as Exhibit H). The checks are dated from June 2016 to July 2016—that is, immediately before the August 1, 2016 collision at issue in this case. *Id*. The production contained a note stating that "Sean Stenson's weekly salary income was $2,500" prior to his alleged injuries on August 1, 2016. *Id.*

Through their efforts to identify Plaintiff's accounts, Defendants obtained copies of processed checks from Plaintiff's FirstBank accounts. But the "paychecks" Plaintiff produced were notably absent from FirstBank's records. And on November 7, 2019, Defendants' counsel received a letter from FirstBank's fraud department stating that the "paychecks" Plaintiff produced were not only never processed, the account from which they were written was *closed* in 2014—more than two years before they were supposedly dated. *See* November 7, 2019 Letter from FirstBank (attached as Exhibit I). Defendants also learned that the account from which the "paychecks" were written in fact belonged to Plaintiff. Plaintiff did not disclose the existence of this account in his sworn Amended Response attesting to the purportedly complete list. *See* Ex. E.

---

all relevant pre-collision medical information himself."  Order at 3.  After the Order, Defendants were able to obtain additional relevant medical records.

## ARGUMENT

**I.     Defendants Are Entitled to Recover Attorney Fees and Costs.**

Defendants initially did not pursue attorney fees in this matter in hopes of fostering reconciliation and expediting the remainder of the discovery process. However, since the Court's Order, Plaintiff has continued to be unwilling to engage in document collection himself and has continued to falsely certify the completeness of his demonstrably incomplete productions. As a result, Defendants have been forced to undertake collections of Plaintiff's records, which has caused Defendants to incur great expense, delayed their ability to schedule depositions, and hampered their ability to adequately defend themselves in this meritless lawsuit. Accordingly, Defendants now seek to recover their reasonable attorney fees in making its Motion to Compel.

### A.  Fed. R. Civ. P. 37(a)(5)(A) Entitles Defendants to Recover Its Attorney Fees.

Fed. R. Civ. P. 37(a)(5)(A) provides that if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* (emphasis added). The only exceptions to an award of attorney fees are if "(1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). "The burden of persuasion is on the losing party to avoid the assessment of expenses and fees by showing that one of the Rule's three enumerated exceptions applies." *DCD Partners, LLC v. Albracht*, No. 17-mc-00007-CMA-KLM, 2018 WL 6061295, at *4 (D. Colo. Nov. 20, 2018).

7

None of the exceptions to Rule 37(a)(5) apply in this case. *First*, as referenced in both Defendants' and Plaintiff's briefing to the Court, Defendants attempted numerous times to meet-and-confer regarding deficiencies in Plaintiff's production of medical and financial records. *See, e.g.*, Defs.' Mot. to Compel, at 3–4; Pl.'s Resp. Br., at 2–3.

*Second*, Plaintiff's nondisclosure of highly relevant financial records was not substantially justified. *DCD Partners*, at *4 (holding a party is only "substantially justified" in opposing discovery "if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested" discovery). Plaintiff was refusing to disclose his financial records while he had a pending claim for loss of income. Additionally, Plaintiff's undisclosed financial records were highly relevant to his non-economic claims. *See* Order at 4 (noting also that "Stenson's financial records will reflect his activities and could provide indications of his emotional state" that is "pertinent to the assessment of any changes in his professional and personal activities that could substantiate his non-economic claims"). Accordingly, Plaintiff had no reasonable justification to make claims of lost wages, emotional distress, and loss of enjoyment of life, among others, while refusing to disclose financial documents evidencing his wages and personal and professional activities during the relevant time period.[6]

---

[6] In addition, Plaintiff's non-disclosure of medical records was also substantially unjustified. As the Court noted in the Order, "[w]here, as here, 'a plaintiff puts his physical health at issue, he must make a good faith effort to authorize the release of relevant medical records.'" Order at 2 (*quoting Fischer v. Dunning*, 574 Fed. App'x 828, 831 (10th Cir. 2014)). Simply put, there is no reasonable justification for a plaintiff alleging personal injury to his spine to withhold readily available and directly relevant medical records involving his spine until the opposing party has made a motion to compel. *See, e.g., Estrada v. Cypress Semiconductor (Minnesota), Inc.*, Civ. No. 08-4779 (PAM/JJK), 2009 WL 10701034, at *2 (D. Minn. April 1, 2009) (awarding attorney fees pursuant to Fed. R. Civ. P. 37(a)(5)(A) where plaintiff's unwillingness to provide medical records in FMLA case necessitated defendant's motion to compel). Further, the Court's recognition that Plaintiff was "unwilling to request and produce all relevant" medical information and that his

*Third*, no other circumstances make an award of attorney fees unjust. Accordingly, Defendants are entitled to their reasonable attorney fees in making their Motion to Compel.

Defendants also seek attorney fees associated with its preparation of this Motion. *See Chung v. Lamb*, No. 14-cv-03244-WYD-KLM, 2018 WL 7141325, at *2 (D. Colo. June 7, 2018) ("Attorneys' fees can be awarded under Rule 37(a)(5)(A) for the time spent preparing fee statements and defending awards of attorneys' fees."); *L.H.H. ex rel. Hernandez v. Horton*, 2015 WL 1057466, at *5 (N.D. Ind. March 10, 2015) ("[T]he Court concludes that Rule 37 does not prevent recovery of fees resulting from the time spent reviewing the Court's Order on the Motion to Compel or the work done on the fee petition briefing."). Defendants will present invoices evidencing attorney fees incurred in preparation of this Motion as they become available.

### B. Defendants' Attorney Fees of $16,803 Are Reasonable.

Defendants have incurred $16,803 in attorney fees making its Motion to Compel. *See* November 22, 2019 Affidavit of Christopher Casolaro (attached as Exhibit J). These were actual, out-of-pocket expenses that Defendants were forced to pay to make its Motion to Compel. The fees were calculated by multiplying the hours lawyers worked in preparing the Motion to Compel and associated filings. *See* Faegre Baker Daniels LLP's Attorney Fees (attached as Exhibit 1 to Ex. J).[7]

---

assertions about the completeness of the records were "unreliable"—in addition to being since proven false—shows Plaintiff's nondisclosure was unjustified.

[7] Defendants seek fees for two attorneys: Christopher Casolaro and Isaac Smith. Mr. Casolaro is an associate at Faegre Baker Daniels who specializes in commercial and products liability litigation and has more than eight years of litigation experience. Mr. Smith is an associate at Faegre Baker Daniels who specializes in commercial and business litigation with more than four years of litigation experience.

The costs and fees incurred by Defendants were reasonable. An attorney fee award is presumed to be reasonable if it is based on the "number of hours reasonably expended [on the litigation] multiplied by a reasonable hourly rate." *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587–88 (Colo. App. 2000). Evidence of a law firm's normal billing rate is an appropriate basis to determine a reasonable billing rate in an area. *See Gurule v. Wilson*, 635 F.2d 782, 793 (10th Cir. 1980), *overruled on other grounds by Cox v. Flood*, 683 F.2d 330, 331 (10th Cir. 1982) ("An award that does not fully compensate an attorney for his time plainly does not meet the standard of reasonable fees . . . . Fees set . . . must be in line with those fees traditionally received from a fee paying client.").

In support of this Motion, Christopher Casolaro, counsel for Defendants, prepared an affidavit opining that the fees Defendants incurred to defend against the dismissed claim were reasonable and necessary.[8] *See* Ex. J. As discussed in the affidavit, rates billed to Defendants are commensurate with Faegre Baker Daniels LLP's capabilities, size, and reputation in Colorado's legal market as well as customary to fees in similar cases of similar complexity. Further, the number of hours billed to Defendants is reasonable based on the time necessarily expended in this action. *Id.*

## II. Sanctions Pursuant to the Court's Inherent Power Are Appropriate.

A court has "inherent power" to "levy sanctions in response to abusive litigation practices." *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (citing *Roadway Express, Inc.*

---

[8] D.C.COLO.L.R. 54.3(a) requires a motion for attorney fees to be supported by affidavit and include for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.

*v. Piper*, 447 U.S. 752, 765 (1980)). The district court has the discretion to "fashion an appropriate sanction for [the] conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991).

Here, Plaintiff abused the judicial process in at least two respects. First, Plaintiff has repeatedly made false assertions that his production of records is complete, even when it was clear that such productions were deficient. Second, Plaintiff engaged in bad faith fabrication of evidence when he produced a series of "paychecks" dated just prior to the collision in 2016 from an account that was closed in 2014. Plaintiff's production of these checks constitutes a fraudulent attempt to produce evidence of a nearly $130,000 yearly income before the collision in an effort to falsely inflate the value of his past and future economic loss, and non-economic loss.[9]

Given the serious nature of Plaintiff's abusive conduct, dismissal of this action is an appropriate sanction in this case. *See Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009) ("A district court has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery."). While recognizing there is no rigid test for determining when such a sanction is appropriate, the Tenth Circuit has "suggested that a district court ought to evaluate five factors before imposing a dismissal sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-

---

[9] While Plaintiff has subsequently withdrawn his claim of lost wages, he continues to seek unspecified "past and future economic expenses, losses, and damages" as well as non-economic damages. *See* First Amend. Compl. at ¶ 24 (ECF 35).

11

compliance; and (5) the efficacy of lesser sanctions." *Id.* Each factor weighs in favor of a dismissal sanction.

*First*, Defendants' disclosure of falsified evidence alone has caused sufficient prejudice to warrant a dismissal sanction. The Tenth Circuit in *Garcia* noted that falsified evidence is a particularly egregious abuse of the litigation process because the non-falsifying party would be "put to enormous additional effort and expense to ferret out plaintiff's lies and to double check every piece of information" and would have "absolutely no confidence that [the falsifying party] would not attempt to offer additional false evidence at trial." *Id.* Plaintiff's repeated failures to produce relevant evidence while falsely representing the absence of such evidence have only compounded the prejudice. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (upholding dismissal sanction where party was prejudiced with undue delay and expense from opposing party's refusal to provide testimony).

*Second*, Plaintiff's interference with the judicial process and culpability are substantial. It is clear that Plaintiff acted willfully and for self-serving purposes when he submitted falsified "paychecks" that purported to show a salary that he never had. Further, the falsified checks were produced in an effort to fraudulently boost Plaintiff's alleged economic and non-economic damages. Such conduct is precisely the type of interference and culpability for which a dismissal sanction is warranted. *Garcia.*, 569 F.3d at 1179.

*Third*, while Plaintiff was not specifically warned about a dismissal sanction, such warning is not always required. *Id.* (upholding dismissal sanction without warning on account of

the egregious conduct of falsifying evidence). Moreover, Plaintiff in this case had notice, through the Court's Order, that the Court would not permit dishonesty. *See* Order at 3.[10]

Finally, given the substantial prejudice that falsification of evidence entails, no other sanction—*e.g.*, monetary sanctions or exclusion of falsified evidence—would be sufficient. The Tenth Circuit has taken a hard line against falsification of evidence, noting that such misconduct can *require* dismissal. *Garcia*, 569 F.3d at 1179 (noting that other sanctions would be insufficient to deter those "who would manufacture evidence and attempt to cover it up"). In particular, a sanction of merely excluding the falsified evidence is particularly disfavored because "[l]itigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues." *Id.* at 1180 (citing *Pope v. Fed. Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990).

Defendants believe that Plaintiff's dishonest conduct casts doubt on all of his averments and claims and warrants the dismissal of the entire action. However, should the Court be absolutely inclined to impose a narrower sanction it could limit dismissal to only Plaintiff's non-economic claims. For such claims—*e.g.* emotional distress, loss of enjoyment of life, inconvenience, and impairment of quality of life—the veracity of Plaintiff's statements is particularly important and cannot be corroborated as easily as his economic claims.

---

[10] The false certification of complete production of financial records that Plaintiff has made are the exact type of conduct condemned by the Court's Order with respect to Plaintiff falsely certifying complete production of his medical records. *See* Order at 3.

### III. In the Alternative, Sanctions Pursuant to Rule 37(b)(2)(A) for Plaintiff's Failure to Obey the Court's Order Are Appropriate.

Rule 37(b)(2)(A) provides an alternative basis for sanctions in this case. Rule 37(b)(2)(A) states that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may" order sanctions. Sanctions may include "prohibiting the disobedient party from supporting . . . designated claims," "striking pleadings in whole or in part," or "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(iii), (v). Further, instead of or in addition to such sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make," but the sanction "must be both just and related to the particular claim which was at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (cleaned up).

This Court's Order compelled Plaintiff to produce all of his financial records from 2009 to present. In recognition of Plaintiff's unwillingness to conduct record collection himself, Defendants agreed to accept a notarized bank account release, a credit report, and a verified list of *all* of Plaintiff's bank accounts so that Defendants could undertake the collection themselves. Plaintiff twice provided lists of bank accounts that he asserted as complete, including under sworn oath. And Plaintiff twice misrepresented the completeness of his accounts. Accordingly, Plaintiff has both failed to produce all compelled financial records *and* failed to provide the information

14

necessary for Defendants to undertake the collection at their own expense. This constitutes a violation of the Court's Order, so sanctions are appropriate.

In deciding whether to order dismissal of a claim as a sanction under Rule 37(b)(2)(A), courts consider the same factors they would consider in ordering such a sanction under its inherent powers. *See Ehrenhaus*, 965 F.2d at 921. Accordingly, for the same reasons discussed above, a dismissal sanction is also appropriate pursuant to Rule 37(b)(2)(A). As discussed above, should the Court be absolutely inclined to impose a sanction narrower than dismissal of the entire action, the Court should dismiss at least Plaintiff's non-economic damages. Finally, given the great expense Defendants incurred in collecting records due to Plaintiff's disobedience of the Court's Order, a sanction awarding Defendants their reasonable expenses, including attorney fees, in addition to other sanctions is substantially justified. Fed. R. Civ. P. 37(b)(2)(C).

## CONCLUSION

Defendants' ability to investigate and defend against Plaintiff's claims, particularly his non-economic claims, hinge on the veracity of Plaintiff's representations. Plaintiff has cast irrevocable doubt on his representations by repeatedly making false statements about his records and forging evidence in a self-serving effort to falsely inflate the value of his claims. Accordingly, the Court should (1) award Defendants their reasonable attorney fees in making their Motion to Compel and this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A); and (2) order dismissal of Plaintiff's claims, particularly his non-economic claims, and award attorney fees as a sanction pursuant to either the Court's inherent power to deter abusive litigation practices, or pursuant to Fed. R. Civ. P. 37(b)(2)(A) for disobeying the Court's Order.

Respectfully submitted this 22nd day of November 2019.

*s/ Christopher J. Casolaro*
Christopher J. Casolaro
Isaac T. Smith
FAEGRE BAKER DANIELS LLP
1144 Fifteenth Street, Ste. 3400
Denver, CO 80202
Telephone: 303-607-3500
*Christopher.Casolaro@FaegreBD.com*
*Isaac.Smith@FaegreBD.com*

Lawrence (Trip) DeMuth III
FAEGRE BAKER DANIELS LLP
1470 Walnut Street, Ste. 300
Boulder, CO 80302
Telephone: (303) 447-7000
*Trip.Demuth@FaegreBD.com*

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 22nd day of November, 2019, a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS** was e-filed with the Court and e-served to the following via the Court's CM/ECF system:

Marc Harden, Esq.
Britt A. Holtz, Esq.
Yerin Cho, Esq.
Zaner Harden Law, LLP
1610 Wynkoop St., Ste. 120
Denver, CO 80202
mh@zanerhardenlaw.com
bh@zanerhardenlaw.com
yc@zanerhardenlaw.com
*Attorneys for Plaintiff Sean Stenson*

*s/ Colleen H. Russell*
Colleen H. Russell
Legal Administrative Assistant

US.125598864.08

## Index of Exhibits

A    A2Z Account Statements

B    July 8, 2019 Deficiency Letter

C    Plaintiff's Response to Defendants' Second Set of Interrogatories

D    October 24, 2019 Deficiency Letter

E    Amended Response

F    Verification for Amended Response

G    Plaintiff's Fourth Supplemental Disclosure

H    A2Z000001-2

I    November 7, 2019 Letter from FirstBank

J    Affidavit of Christopher Casolaro